AO 440 (Rev. 5/85) Summons in a Civil Action

# 05 CV 10682

# United States District Court

SOUTHERN                    NEW YORK
_____ DISTRICT OF _____

EDGARDO RODRIGUEZ

## SUMMONS IN A CIVIL ACTION

V.                                    CASE NUMBER:

THE CITY OF NEW YORK, RAYMOND KELLY POLICE COMMISSIONER
OF THE NEW YORK CITY POLICE DEPARTMENT, CAPTAIN ALBERT
PIGNATARO, SGT. ANTHONY PIGNATARO, CAPTAIN GEORGE O"BRIEN
LT. CANDER, DET. DOLORES WEINER, SGT. GEMMA MASTERSON,
LT. ANDREW SMITH. ALL INDIVIDUALS ARE BEING SUED IN THEIR
INDIVIDUAL AND PROFESSIONAL CAPACITY.

TO: (Name and Address of Defendant)

SEE ATTACHED

YOU ARE HEREBY SUMMONED and required to file with the Clerk of this Court and serve upon

PLAINTIFF'S ATTORNEY (name and address)

CRONIN & BYCZEK, LLP
1981 Marcus Avenue, Suite 227
Lake Success, New York   11042

an answer to the complaint which is herewith served upon you, within _____20_____ days after service of
this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken
against you for the relief demanded in the complaint.

J. MICHAEL McMAHON                    DEC 2 1 2005

CLERK

_____              _____
BY DEPUTY CLERK                       DATE

City of New York
C/o New York City Law Department
100 Church Street
New York, New York   10007

Commission Raymond Kelly
New York City Police Department
One Police Plaza
New York, New York   10038

Captain Albert Pignataro
C/o Internal Affairs Bureau
315 Hudson Street
New York, New York

Sergeant Anthony Pignataro
C/o Internal Affairs Bureau
315 Hudson Street
New York, New York

Captain George O'Brien
C/o Internal Affairs Bureau
315 Hudson Street
New York, New York

Administrative Lt. Cander
C/o Internal Affairs Bureau
315 Hudson Street
New York, New York

Detective Delores Weiner
C/o Internal Affairs Bureau
315 Hudson Street
New York, New York

Sgt. Gemma Masterson
C/o Internal Affairs Bureau
315 Hudson Street
New York, New York

Lt. Andrew Smith
C/o Internal Affairs Bureau
315 Hudson Street
New York, New York

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
EDGARDO RODRIGUEZ

                    Plaintiffs,                         JUDGE CASTEL

        -against-

THE CITY OF NEW YORK, RAYMOND KELLY,           **COMPLAINT WITH**
POLICE COMMISSIONER OF THE NEW YORK            **JURY DEMAND**
CITY POLICE DEPARTMENT, CAPTAIN ALBERT
PIGNATARO, SERGEANT ANTHONY PIGNATARO,
CAPTAIN GEORGE O'BRIEN,
ADMINISTRATIVE LIEUTENANT CANDER,
DETECTIVE DOLORES WEINER, SERGEANT             **05 CV 10682**
GEMMA MASTERSON, LIEUTENANT
ANDREW SMITH. All individuals are
being sued in their individual and
professional capacity,

                    Defendants.
------------------------------------X


        Plaintiff, EDGARDO RODRIGUEZ, by his attorneys, the law

offices of CRONIN & BYCZEK, LLP, as and for his Complaint, upon

information and belief, allege the following;

                    **PRELIMINARY STATEMENT**

        1.   This is a civil action for damages and equitable relief

instituted and pursuant to the provisions of Title VII of the Civil

Rights Act of 1964, as amended, providing for relief against

retaliation for prior opposition to discrimination; 42 U.S.C. §1983

of the Civil Rights Act of 1871, as amended ("§1983"); and 42

U.S.C. §1985, as amended ("§1985"); and New York State Executive

Law §296.


                            1

2.   Plaintiff EDGARDO RODRIGUEZ brings this action to redress civil rights violations against him in the terms and conditions of his employment in that Plaintiff was and continues to be subjected to a serious continuing and ongoing pattern and practice of discrimination within the New York City Police Department, including *inter alia*, being unfairly penalized, being denied accommodations, being assigned less preferred assignments and eventually terminated, all based on retaliation for complaints which he had made concerning discriminatory treatments.

### JURISDICTION AND VENUE

3.   This Court has jurisdiction of the action pursuant to 42 U.S.C. 2000e-5(f)(3), and 28 U.S.C. 1343 (3-4) and the principals of ancillary jurisdiction under §1983 and  §1985.

4.   Plaintiff received a "Right to Sue" letter from the EEOC on September 23, 2005.  This lawsuit is commenced within ninety (90) days of receipt of said notice.  A copy of Notice of Suit Rights letter is attached as **Exhibit "A"**.

5.   Venue properly lies in this judicial district pursuant to 28 U. S. C. Section 1391 (b) and (c) and 42 U. S. C. Section 2000e-5 (3), in that Defendant City of New York maintains an office in this judicial district and a substantial part of the events constituting the retaliation and discrimination have taken place within this judicial district.

6.   Jurisdiction to grant declaratory judgment is conferred by 28 U. S. C. Section 2201, 2202. An award of costs and attorney

fees is authorized pursuant to 42 U. S. C. Section 1988.

**PARTIES**

7. At all relevant times herein Plaintiff, EDGARDO RODRIGUEZ was a Detective for the New York City Police Department and a citizen and resident of the State of New York. Plaintiff is a male Hispanic with a diagnosed disability of alcoholism and Post Traumatic Stress Disorder.  As such, Plaintiff is a member of a protected class pursuant to Title VII of the Civil Rights Act of 1964 and as defined in the Americans with Disabilities Act of 1990.

8.   Defendant CITY OF NEW YORK is a municipal entity created and authorized under the laws of the State of New York. Defendant, City of New York, is authorized by law to maintain a Police Department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible.

9.   Defendant, RAYMOND KELLY ("KELLY") has been Police Commissioner of the New York City Police Department since January 2002, and was acting in such capacity at all times relevant herein. He is sued in his official capacity.

10.   Defendant CAPTAIN ALBERT PIGNATARO (" ALBERT PIGNATARO") is a Captain in the New York City Police Department and was Plaintiff's supervisor during relevant times while Plaintiff was employed with the New York City Police Department. He is being sued in his individual and his official capacity.

3

11.   Defendant SERGEANT ANTHONY PIGNATARO ("ANTHONY PIGNATARO") is a Sergeant in the New York City Police Department and a relative of CAPTAIN ALBERT PIGNATARO. He is being sued in his individual and his official capacities.

12.   Defendant CAPTAIN GEORGE O'BRIEN ("O'BRIEN") is a Captain in the New York City Police Department. He was involved in the investigation, arrest and malicious prosecution of the PLAINTIFF. He is being sued in his individual and his official capacities.

13.   Defendant, ADMINISTRATIVE LIEUTENANT "JOHN" CANDER, ("CANDER") is an Administrative Lieutenant in the New York City Police Department and PLAINTIFF'S supervisor prior to his termination. He is being sued in his individual and his official capacities.

14.   Defendant, DETECTIVE DOLORES WEINER, ("WEINER") is a Detective in the New York City Police Department. She was involved in the investigation, arrest and malicious prosecution of the PLAINTIFF. She is being sued in her individual and his official capacities.

15.   Defendant, SERGEANT GEMMA MASTERSON ("MASTERSON") is a Sergeant in the New York City Police Department. She was involved in the investigation, arrest and malicious prosecution of the PLAINTIFF. She is being sued in her individual and his official capacities.

16.   Defendant, LIEUTENANT ANDREW SMITH ("SMITH") is a Lieutenant in the New York City Police Department. He was involved

4

in the investigation, arrest and malicious prosecution of the PLAINTIFF. He is being sued in his individual and his official capacities.

## BACKGROUND

17.   Plaintiff was employed by the New York City Police Department as a Police Officer from April 25, 1990 to June 17, 1993.  Plaintiff was promoted to Detective in 1993 and remained employed as a Detective for the New York City Police Department until his termination on April 5, 2005.

18.   On or about October 4, 1994, Plaintiff filed a complaint of discrimination with the OEEO-NYCPD against Defendant, Albert Pignataro, while assigned to the Queens Public Morals Division.

19.   On April 27, 1995, Sandra M. Marsh, Deputy Commissioner of EEO advised Plaintiff that the OEEO had conducted an investigation into his allegations.  Based on the EEO's findings, Plaintiff's complaints against Defendant, Albert Pignataro, were classified as "substantiated, with the recommendation of charges and specifications against the Respondent" (Albert Pignataro).

20.   As a result of the EEO's findings, Defendant Albert Pignataro was transferred to a different Borough Command and subject to further discipline.

21.   On or about July 1995, Defendant Albert Pignataro called Plaintiff's supervisor and made false and disparaging remarks regarding Plaintiff's work ethic.  Albert Pignataro also threatened Plaintiff and swore to get even with him one day.

5

22. On or about July 25, 1995, Plaintiff filed a second complaint with the OEEO-NYCPD against Defendant Albert Pignataro for retaliation.

23. On or about December 1995, while Plaintiff was working at the Queens Vice Office, two males in plain clothes walked into the office unannounced and began using the department telephone. When Plaintiff questioned the two men with regard to their identities and reason for being in the office, one of the males became verbally abusive and combative. That male was later identified as defendant Sgt. Joe Pignataro, brother of defendant Captain Albert Pignataro.

24. Plaintiff was later advised by Det. Ilene Corrigan that defendant Albert Pignataro told her that he was going to get plaintiff because of the OEEO complaint plaintiff filed against him.

25. On or about December 1995 – January 1996, plaintiff was transferred to Sgt. Maria Valdez's team in Queens Vice. Sgt. Maria Valdez advised plaintiff that she was ordered by Integrity Control Officer Lt. Breiner to keep plaintiff under a tight leash. Sgt. Valdez further advised plaintiff that defendant Albert Pignataro spoke to Lt. Breiner and told her to "fuck with" plaintiff.

26. On or about February 2, 1996, plaintiff was interviewed for an investigator's position in the Organized Crime Investigative Division. During the interview, the Commanding Officer of OCID asked plaintiff if he was the officer that had a problem with

6

defendant Albert Pignataro in Vice.   Det. John Carillo of OCID
later advised plaintiff that defendant Albert Pignataro called and
spoke to the Commanding Officer of OCID prior to plaintiff's
interview.

27.   On or about February 23, 1996, plaintiff was questioned
by Lt. Breiner regarding a court notification for that date.
Plaintiff was notified on February 21, 1996 by Police Officer
Moncayo of the February 23rd court date.   However, Lt. Breiner
conducted an immediate investigation through appearance control,
which determined that there was no notification for plaintiff to
appear in court on February 23, 1996.

28.   On March 4, 1996, Lt. Breiner called OCCB Inspection and
requested that the incident be investigated.   A twelve-month audit
concerning plaintiff's past court appearances was conducted.   No
violations were reported.   Despite this finding, Lt. Breiner
conferred with Lt. Gorman of the Department Advocate's Office in an
attempt to have plaintiff served with charges and specifications
for the February 23, 1996 court incident.   Lt. Gorman recommended
that no charges be filed against plaintiff.

29.   On or about May 1, 1996, plaintiff was questioned
formally pursuant to Patrol Guide 118-9 (G.O. 15) regarding the
February court appearance.

30.   During the summer of 1996, plaintiff was unjustly subject
to another OCCB Inspection Investigation and a formal G.O. 15
hearing.   Plaintiff advised defendants that he believed these

7

investigations to be retaliation for the OEEO complaint he filed against defendant Albert Pignataro.

31.  On or about November 11, 1996, plaintiff completed an application to attend the FBI academy, which was endorsed by Captain Dolan.  Plaintiff was later denied entry into the academy and advised by Det. Ilene Corrigan that defendant Albert Pignataro had the application denied.

32.  On November 12, 1996, plaintiff advised Sgt. Valdez and Captain Dolan in writing of the continued acts of retaliation.

33.  On or about February 3, 1997, plaintiff was transferred from Queens Vice to the 106 Squad out of rotation.  Plaintiff was later advised that he was transferred out of rotation so that defendant Albert Pignataro could be reassigned to Queens Vice.

34.  Upon plaintiff's transfer, the other detectives in plaintiff's squad would not work with plaintiff.  Plaintiff questioned the Commanding Officer about the situation and was advised that defendant Albert Pignataro called the other detectives in plaintiff's squad and told them to make life difficult for plaintiff.

35.  During December 1997, plaintiff's newly assigned Commanding Officer, Sgt. Louis Luciani, continuously subjected plaintiff to intense scrutiny of his work, harassed plaintiff, and treated plaintiff differently than other similarly situated white male detectives.  Plaintiff was informed by Det. Leonard Devlin that he took a message from defendant Al Pignataro for Sgt.

8

Luciani.

36.   Plaintiff questioned Sgt. Luciani regarding his constant harassment of plaintiff.   Sgt. Luciani threatened to charge plaintiff with discourtesy and possible suspension. Plaintiff advised Det. Classi that he was going to file further retaliation charges regarding Sgt. Luciani's treatment of plaintiff.   Det. Classi later advised plaintiff that Sgt. Luciani would not proceed with charges against plaintiff if plaintiff refrained from filing further retaliation charges.

37.   During the summer of 2000, the Queens office of the NYPD Gang Unit was reassigned and based out of the 106 Precinct.   The Commanding Officer of the Gang Unit was defendant Albert Pignataro. Plaintiff received a telephone call from his Commanding Officer Sgt. Thomas Cusack warning plaintiff to stay out of the office. Sgt. Cusack later advised plaintiff that defendant Albert Pignataro told him that plaintiff was a "dirty cop".

38.   As a result of the September 11, 2001, World Trade Center attack, Plaintiff was assigned to the World Trade Center site and the Staten Island landfill.   In October of 2001, Plaintiff was also assigned to the airplane crash that occurred in Far Rockaway Queens where hundreds of individuals were killed.   Plaintiff was diagnosed with Post Traumatic Stress Disorder and alcoholism following these assignments.

39.   On August 1, 2002, Plaintiff was falsely arrested and prosecuted for Grand Larceny following an investigation by members

9

of the New York City Police Department Internal Affairs Bureau ("IAB") regarding a stolen credit card. Plaintiff was processed through Central Booking, photographed, fingerprinted and arraigned on the false charges.

40. Plaintiff's arrest on August 1, 2002, stems from an incident wherein a prisoner, following his own arrest by Plaintiff and two other officers on or about July 23, 2002 in Queens County, reported to IAB that his credit card was missing from his wallet when it was returned to him upon his release from jail the following day. Purchases were made at several retail stores in Suffolk County using the prisoner/complainant's credit card during the period that the card was missing.

41. The NYPD Internal Affairs Bureau's investigation of plaintiff prior to his arrest was headed by Defendant Sgt. Anthony Pignataro and Defendants Smith, O'Brien, Weiner and Masterson. Defendant Sgt. Anthony Pignataro is a close relative of Defendant Albert Pignataro.

42. Defendants' false arrest and malicious prosecution of plaintiff is directly linked to plaintiff's prior complaints of discrimination against defendant Albert Pignataro.

43. During IAB's investigation of the plaintiff prior to his arrest, defendant Albert Pignataro was heard and observed by other members of IAB constantly speaking about plaintiff's case. Moreover, defendant Albert Pignataro admitted to other members of IAB that the actions taken by defendants were in retaliation for

10

Plaintiff's prior complaints of civil rights violations.

44. Significantly, investigative handwritten notes prepared by defendants Weiner and Masterson immediately prior to plaintiff's arrest further evidence the fact that the actions taken by defendants were retaliatory.

45. During discovery in the Queens criminal case, the Assistant District Attorney prosecuting Plaintiff's case turned over approximately 800 pages of Rosario material, including two pages of handwritten notes by Defendants Weiner and Masterson prepared during their IAB investigation of Plaintiff. The handwritten notes on one of theses two pages stopped in the middle of the page.

46. During the course of Plaintiff's criminal trial in Queens, the Assistant District Attorney handed over a manila envelope containing Rosario material. The majority of the Rosario material contained in the manila envelope was identical to the Rosario material previously disclosed by the Queens D.A.'s office with the exception of one of the two pages of handwritten notes which now contained additional handwritten notes continuing from the middle of the page which had been intentionally redacted from the original document.

47. The unredacted handwritten document contains notes by Defendant Weiner stating that the complaining witness's wallet containing the stolen credit card had been removed from the complaining witness on two separate occasions, once at the 106

11

Precinct and once at Central Booking.

48.  Significantly, the unredacted document contained notes concerning a conversation between Defendant Smith and Defendant Masterson wherein Defendant Smith recommended that Plaintiff be placed under arrest.  The following reference is noted next to Defendant Smith's recommendation to arrest Plaintiff, "Capt Pigs OEEO".  Captain Pigs is a direct reference to Captain Albert Pignataro.

49.  Prior to Plaintiff's arrest, he was subject to an illegal search conducted at his home by the Defendants and other members of IAB.

50.  As a result of Plaintiff's arrest, he was suspended for thirty-five (35) days.  On September 4, 2002, Plaintiff was temporarily reinstated and reassigned to the Fleet Services Unit of NYPD.

51.  As a result of Plaintiff's arrest, criminal charges were filed against Plaintiff by the Queens District Attorney and the Suffolk County District Attorney.

52.  On or about August 4, 2002, Plaintiff was admitted to the Psychiatric Unit at Columbia Presbyterian Hospital for eleven (11) days.  Plaintiff was treated for insomnia and alcoholism and thereafter diagnosed with Post Traumatic Stress Disorder as a result of the lengthy periods of time Plaintiff was assigned to the World Trade Center, Staten Island landfill and Far Rockaway plane crash site.

12

53.   On August 15, 2002, Plaintiff was released from Columbia Presbyterian Hospital and entered a rehab program for twenty-one (21) days.

54.   On September 5, 2002, Plaintiff returned to work at NYPD but suffered a relapse as a result of the retaliatory conduct of the defendants on September 30, 2002. At said time, Plaintiff was again hospitalized at Columbia Presbyterian Hospital in the psychiatric unit.

55.   On October 11, 2002, Plaintiff was released from the hospital into an outpatient unit and placed on sick leave with the NYPD. As part of his sick leave, Plaintiff was given a 16 hour per day pass to attend outpatient services at Columbia Presbyterian Hospital in the morning and Alcoholics Anonymous in the afternoon.

56.   In December of 2002, Defendant Smith, in an effort to harass and retaliate against Plaintiff, contacted Lt. Valente of the Absence Control Unit and interrogated Plaintiff regarding his 16-hour pass. On or about December 23, 2002, Defendant Weiner called Lt. Valente and questioned Lt. Valente as to Plaintiff's 16-hour pass.

57.   As a result of the interference and harassment by the Defendants, Plaintiff's 16-hour pass was reduced to 8 hours.

58.   On or about January 9, 2003, Lt. Valente advised Defendants that Plaintiff was under the care of three (3) psychologists and that it was recommended that Plaintiff remain out sick with a pass from 8:00 a.m. to 4:00 p.m.

13

59.   On January 22, 2003, Plaintiff again suffered a relapse and was readmitted to Columbia Presbyterian Hospital.

60.   On or about February 27, 2003, Plaintiff was arrested by Suffolk County Police pursuant to false information, stemming from alleged theft and use of a stolen credit card, given to Suffolk County District Attorney's Office by the Defendants.

61.   On July 14, 2003, Plaintiff returned to the NYPD in the Purchasing Department.   At that time, Plaintiff requested an accommodation from his Civilian Supervisor that he be permitted to work the afternoon shift due to certain side effects of the various medications Plaintiff was taking.

62.   On July 15, 2003, Defendant Cander advised Plaintiff that his request was denied and that his new assignment was a tour requiring Plaintiff to sit in a security booth facing a cemetery that began at 6:50 a.m.

63.   Because of Plaintiff's experience at the World Trade Center, Staten Island landfill and the Far Rockaway plane crash resulting in his disability, Plaintiff requested to be removed from the post facing the cemetery because it was causing him extreme emotional distress and flashbacks.

64.   Plaintiff's request to move to a different post was denied and his regular days off were changed from Saturday/Sunday to Thursday/Friday.

65.   As a result of Defendants' failure to accommodate Plaintiff in regards to his job assignment and tour of duty,

14

Plaintiff suffered another relapse.

66. On July 19, 2003, Plaintiff was readmitted to Columbia Presbyterian Hospital Psychiatric Unit for eleven (11) days.

67. On August 26, 2003, Plaintiff submitted a formal written request for an accommodation to the NYPD and specifically, Defendant Cander. Additionally, Dr. Proper, an employee of the NYPD in the Psychiatric Evaluations Unit, made a request on Plaintiff's behalf to Defendant Cander to change Plaintiff's work shift to the afternoon in order to accommodate the side effects of the medications Plaintiff was taking.

68. Defendant Cander disregarded Dr. Proper's request on behalf of the Plaintiff for an accommodation and changed Plaintiff's tour from 6:50 a.m. to 9:50 a.m. and further changed Plaintiff's days off from Thursday/Friday to Wednesday/Thursday.

69. Plaintiff was scheduled to return to work on September 5, 2003, therefore on September 4, 2003, Plaintiff requested and was denied by Defendant Cander for an accommodation to take September 5, 2003 off in order to attend a previously scheduled doctor's appointment.

70. On September 5, 2003, Dr. Proper of the NYPD placed Plaintiff out on sick leave.

71. On October 8, 2003, Plaintiff renewed his request for a reasonable accommodation.

72. On November 3, 2003, Plaintiff received a letter from the OEEO-NYPD advising him that he had received a change in tour from

15

6:50 a.m. to 9:50 a.m. and that no further accommodation would be made by the NYPD.

73.   On or about December of 2003, the NYPD Advocate's Office notified Plaintiff to appear for a hearing/formal questioning concerning departmental charges, which stemmed from Plaintiff's arrest of August 1, 2002.  At the time of the scheduled formal questioning/hearing, criminal charges were pending in Queens County against Plaintiff.

74.   On the advise of counsel representing Plaintiff in the criminal matter, Plaintiff requested a postponement of the hearing/formal questioning until after the criminal proceedings against him were concluded.

75.   Defendants denied Plaintiff's request for a postponement of the questioning.  As a result of Plaintiff's exercise of his Fifth Amendment rights regarding questions posed to him at the hearing, Plaintiff was suspended without pay and ultimately terminated from employment on that basis alone.

76.   In July 2004, Plaintiff suffered yet another relapse and was readmitted to Columbia Presbyterian Hospital on July 21, 2004

77.   On October 6, 2004, Plaintiff was acquitted by a Queens Jury of all criminal charges falsely and maliciously brought by the Defendants.

78.   During the course of the criminal trial in Queens County, certain evidence came to light, which revealed that Defendants had intentionally and maliciously failed to turn over exculpatory

16

evidence.

79.    Defendants violated the Patrol Guide and other rules and regulations of the NYPD in regards to identification by witnesses and the failure to conduct a line-up.  Specifically, the alleged identification by witnesses was tainted as the witnesses, including the complainant, were shown a sole photograph of a male who appeared to look like the Plaintiff prior to being shown the photo array containing Plaintiff's photograph.   None of the witnesses were able to identify Plaintiff as the alleged perpetrator.  This information was intentionally withheld by Defendant Masterson at the time that she applied for a search warrant for Plaintiff's residence.   Furthermore, Defendants failed to conduct a line-up mandated by the NYPD Patrol Guide after securing funds for the line up.

80.    Testimony at the Queens County trial established that Defendants intentionally lost documents and key evidence in an attempt to convict Plaintiff by any means in retaliation for the complaints Plaintiff filed against Albert Pignataro with the NYPD.

81.    Defendants continued to violate Plaintiff's civil and constitutional rights by engaging in a pattern of discrimination and retaliation by aiding the Suffolk County District Attorney in filing false and malicious criminal charges against Plaintiff, and prosecuting said charges against Plaintiff.

82.    During the criminal trial in Queens County, Defendant Smith approached Plaintiff's criminal attorney, David Singh, in the

17

hallway and said, "tell Eddie (Plaintiff) not to fuck around in Suffolk County because they are going to burn him".

83. Plaintiff was maliciously prosecuted by the Suffolk County District Attorney's Office with the assistance of the Defendants and was ultimately acquitted of all charges by a Suffolk County Jury in July 2005.

84. As a result of the false accusations made by the Defendants against the Plaintiff which resulted in his arrest and criminal prosecution for which he was acquitted, Plaintiff was terminated from his job as an NYPD Detective and suffered extreme emotional and psychological, economic and compensatory damages. In addition, Plaintiff has been humiliated in front of his family and friends and his reputation has been tarnished to the point that he is unable to obtain similar employment with any other police department or other law enforcement entity.

## AS AND FOR A FIRST CAUSE OF ACTION
## PURSUANT TO 42 U.S.C. SECTION 1983

85. Plaintiff's repeats, realleges and reiterates each and every allegation set forth in paragraphs "1" through "88" as if set forth in full herein.

86. Defendants actions as alleged herein were committed under color of State law.

87. That defendants did conspire to violate the plaintiff's Constitutional rights by arresting the plaintiff and causing him

to face criminal charges felony charges without justification, right or authority.

88. That the defendants did willfully and knowingly conspire and fabricate evidence with the intent of causing the plaintiff to be falsely convicted at trial.

89. That the defendants maliciously and vindictively prosecuted the plaintiff on the aforesaid false charges.

90. That on or about October 4, 2004, at the Queens Criminal Court of Queens County, State of New York, a jury verdict of "Not Guilty" on all counts was rendered after trial of the plaintiff, thereupon the criminal prosecution of the plaintiff terminated wholly in his favor.

91. That on or about July, 2005, at the Suffolk Criminal Court of Suffolk County, State of New York, a jury verdict of "Not Guilty" on all counts was rendered after trial of the plaintiff, thereupon the criminal prosecution of the plaintiff terminated wholly in his favor.

92. That the defendant CITY OF NEW YORK failed to properly investigate the false arrest, failed to properly instruct, supervise, control its members, including defendants CAPTAIN ALBERT PIGNATARO, SERGEANT ANTHONY PIGNATARO, CAPTAIN GEORGE O'BRIEN, ADMINISTRATIVE LIEUTENANT CANDER, DETECTIVE DOLORES WEINER, SERGEANT GEMMA MASTERSON, and LIEUTENANT ANDREW SMITH in the power of police officers to make arrests pursuant to law and proper police procedures.

93.   That as a direct and proximate result of the aforementioned conduct of the defendants, the plaintiff was deprived of his liberty, was compelled to stand trial on false and malicious charges, subject to an unlawful search and seizure, and was unlawfully terminated for exercising his Fifth Amendment rights, all in violation of his rights under the Fourth, Fifth and Fourteenth Amendments to the Constitution.

94.   That defendants, CAPTAIN ALBERT PIGNATARO, SERGEANT ANTHONY PIGNATARO, CAPTAIN GEORGE O'BRIEN, ADMINISTRATIVE LIEUTENANT CANDER, DETECTIVE DOLORES WEINER, SERGEANT GEMMA MASTERSON, and LIEUTENANT ANDREW SMITH, individually and as members of the NEW YORK CITY POLICE DEPARTMENT, acted pursuant to the de facto policies of their employer with reckless indifference to the rights of citizens and more particularly the de facto policies tolerating and ratifying the unlawful arrests and prosecution of citizens.

95.   That as a direct and proximate result of the foregoing, the plaintiff sustained injury and damage consisting of loss of liberty, legal expense, shock, fright and emotional distress all to his damage for which the defendants are liable pursuant to 42 U.S.C. 1983, jointly and severally.

96.   By Defendants acts and practices in, *inter alia*, denying Plaintiff a reasonable accommodation, over time opportunities and work assignments, unfairly penalizing Plaintiff, suspending Plaintiff, giving Plaintiff negative evaluations and other acts

which created a hostile working environment, on the basis on Plaintiff's race and in retaliation for Plaintiff's complaints of discrimination, Defendants have discriminated and retaliated against Plaintiff as an employee with respect to his compensation, terms and conditions and privileges of employment and deprived Plaintiff of his rights, privileges and immunities secured by the United States Constitution and laws and 42 U.S.C §1983.

97.   By reason of the foregoing the Defendants have violated §1983 and Plaintiff is entitled to the following:

a.   An injunction ordering Defendants to cease their discriminatory practices and reinstatement of Plaintiff as a Detective with the NYPD;

b.   Economic and compensatory damages in the amount of not less than Two Million Dollars;

c.   Punitive damages against the individual Defendants of not less than Two Million Dollars; and

d.   Attorneys and expert fees in an amount to be ascertained at the conclusion of this litigation.

## AS AND FOR A SECOND CAUSE OF ACTION
## PURSUANT TO 42 U.S.C. SECTION 1985

98.   Plaintiff's repeats, realleges and reiterates each and every allegation set forth in paragraphs "1" through "100" as if set forth in full herein.

99.   Defendants have conspired with and amongst each other to deprive Plaintiff of his rights under the United States

21

Constitution and federal and state law.

100. Defendants have conspired to violate the Plaintiff's civil rights pursuant to 42 U.S.C. §1985 when they willfully and knowingly conspired together to implement, direct and/or participate in a plan to fabricate evidence with the intent of causing Plaintiff to be maliciously prosecuted and falsely convicted at trial.

101. The actions and omissions of the Defendants, in depriving Plaintiff of his Constitutional and Civil Rights by their participation and conduct in facilitating the filing of false criminal charges and criminal prosecution which resulted in two acquittals, as herein stated, were willful and malicious acts.

102. Defendants further conspired together to implement a hostile work environment and engage in acts of retaliation which include but are not limited to denying plaintiff a reasonable accommodation as a result of his disability, denying plaintiff due process, overtime, work assignments, promotions and positions with the NYPD because of his national origin and in retaliation for Plaintiff's complaints of discrimination, and subjecting plaintiff to a higher standard of scrutiny and harsher evaluations than other officers who were not Hispanic and/or had not filed discrimination complaints.

103. Moreover, Defendants engaged in a practice and policy whereby minority officers, who file discrimination complaints against their supervisors such as Plaintiff, are routinely

22

retaliated against by NYPD supervisors.

104. Such policy and practice is an intentional and concerted effort by Defendants and NYPD supervisors.

105. By reason of this conspiracy, each of the Defendants has violated 42 U.S.C. §1985.

106. By reason of the foregoing the Defendants have violated §1985 and Plaintiff is entitled to the following:

   a.   An injunction ordering Defendants to cease their discriminatory practices and reinstatement as a Detective with the NYPD;

   b.   Economic and compensatory damages in the amount of not less than Two Million Dollars;

   c.   Punitive damages against the individual Defendants of not less than Two Million Dollars; and

   d.   Attorneys and expert fees in an amount to be ascertained at the conclusion of this litigation.

### AS AND FOR A THIRD CAUSE OF ACTION
### PURSUANT TO TITLE VII FOR HOSTILE WORK ENVIRONMENT

107. Plaintiff's repeats, realleges and reiterates each and every allegation set forth in paragraphs "1" through "109" as if set forth in full herein.

108. Based upon the above, Plaintiff was discriminated against by Defendants by being forced to endure continued and repeated discrimination and retaliation.  Said acts consisted of but are not limited to, continued increased levels of scrutiny, denial of

promotions and advanced training opportunities, threats of disciplinary charges and specifications, denial of reasonable accommodations, less desirable work assignments, false arrest, and malicious prosecution, as aforestated.

109. The Defendants intentionally and willfully harassed Plaintiff and permitted Plaintiff to be harassed in employment on account of his race and in retaliation for opposition to discrimination, thereby in violation of Title VII of the Civil Rights Act of 1964 as amended.

110. Despite Plaintiff's repeated complaints, no significant action was taken by Defendant, CITY OF NEW YORK, or its agents, to stop the harassment of Plaintiff, thereby contributing to a hostile work environment.

111. As a result of the Defendants' conduct, the Plaintiff has suffered economic loss, pain, humiliation, extreme emotional distress and continues to suffer to this day, and further as a result of the Defendants' conduct, the Plaintiff has suffered both professionally and personally.

112. As a result of the foregoing, the Plaintiff has been damaged in the amount of TWO MILLION ($2,000,000.00) DOLLARS. Additionally, the Plaintiff seeks FIVE MILLION ($5,000,000.00) DOLLARS in punitive damages from each of the Defendants.

### AS AND FOR A FOURTH CAUSE OF ACTION
### PURSUANT TO TITLE VII FOR UNLAWFUL RETALIATION

113. Plaintiff's repeats, realleges and reiterates each and

every allegation set forth in paragraphs "1" through "115" as if set forth in full herein.

114. Based upon the above detailed acts of discrimination and retaliation, the Plaintiff was discriminated against by Defendants by being forced to endure continued and repeated discrimination because of his national origin and in retaliation for his opposition to discrimination.

115. The Defendants, by and through the conduct of CAPTAIN ALBERT PIGNATARO, SERGEANT ANTHONY PIGNATARO, CAPTAIN GEORGE O'BRIEN, ADMINISTRATIVE LIEUTENANT CANDER, DETECTIVE DOLORES WEINER, SERGEANT GEMMA MASTERSON, and LIEUTENANT ANDREW SMITH, intentionally and willfully harassed Plaintiff on account of his national origin and in retaliation for opposition to discrimination, thereby in violation of Title VII of the Civil Rights Act of 1964 as amended.

116. As a result of the Defendants' conduct, the Plaintiff has suffered economic loss, pain, humiliation, extreme emotional distress and continue to suffer to this day, and further as a result of the Defendants' conduct, the Plaintiff has suffered both professionally and personally.

117. As a result of the foregoing, the Plaintiff has been damaged in the amount of FIVE MILLION ($5,000,000.00) DOLLARS. Additionally, the Plaintiff seeks FIVE MILLION ($5,000,000.00) DOLLARS in punitive damages from each of the Defendants.

## AS AND FOR A FIFTH CAUSE OF ACTION PURSUANT TO
## NEW YORK STATE EXECUTIVE LAW §296 AGAINST ALL DEFENDANTS

118. The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "120" with the same force and effect as if fully set forth herein.

119. Based on the foregoing, the Defendants intentionally and willfully discriminated against the Plaintiff in his employment on account of his national origin and in retaliation for opposition to discriminatory practices, in violation of New York State Executive Law §296.

120. Plaintiff was continuously victimized by defendants' harassing behavior and specifically, defendant ALBERT PIGNATARO's continued acts of retaliation against plaintiff for engaging in protected activity.

121. Even though Defendants were aware of CAPTAIN ALBERT PIGNATARO's propensity, no actions taken by them were effective in correcting the hostile work environment suffered by Plaintiff.

122. Such conduct on the part of the Defendants and all others, without cause or justification, violated the Plaintiff's Civil Rights guaranteed under the New York State Constitution and the New York State Executive Law §296.

123. As a result of the Defendants' actions and of the deprivations of Plaintiff's rights as guaranteed under New York State Executive Law §296, the Plaintiff has suffered economic loss, pain, humiliation and extreme emotional distress.

124. As a result of the negligent, wrongful, careless, reckless and intentional acts of the Defendants, the Plaintiff has been damaged in the amount of TWO MILLION ($5,000,000.00) DOLLARS. Additionally, Plaintiff seeks TWO MILLION ($2,000,000.00) DOLLARS in punitive damages.

WHEREFORE, Plaintiff requests that this Court issue a judgment granting the following relief to Plaintiff:

1. Issue a declaratory judgment finding as follows:

   a. Defendants have violated the provisions of 42 U.S.C. §1983, et seq.;
   b. Defendants have violated the provisions of 42 U.S.C. §1985, et seq.;
   c. Defendants have violated the provisions of Title VII of the Civil Rights Act of 1964, et seq.;

2. Issue an injunction ordering Defendants to cease their discriminatory practices and remove the disciplinary charges and improper disciplinary actions from Plaintiff's personnel records and NYPD records and to further order Defendants to reinstate Plaintiff to the rank of Detective for the NYPD; and

3. Award Plaintiff damages as follows:

   a. As for the First Cause of Action, economic and compensatory damages as permitted by statute but not less than Two Million Dollars and attorneys and expert fees in an amount to be decided at the conclusion of this litigation.

   b. As for the Second Cause of Action, economic and compensatory damages as permitted by statute but not less than Two Million Dollars and attorneys and expert fees in an amount to

be decided at the conclusion of this litigation.

c. As for the Third Cause of Action, economic and compensatory damages as permitted by statute but not less than Two Million Dollars and attorneys and expert fees in an amount to be decided at the conclusion of this litigation.

d. As for the Fourth Cause of Action, economic and compensatory damages as permitted by statute but not less than Five Million Dollars and attorneys and expert fees in an amount to be decided at the conclusion of this litigation.

e. As for the Fifth Cause of Action, economic and compensatory damages as permitted by statute but not less than Two Million Dollars and attorneys and expert fees in an amount to be decided at the conclusion of this litigation.

4. Granting such other and further relief as this Court may deem just and proper.

Dated:    Lake Success, New York
          December 21, 2005


                              Yours etc,
                              Cronin & Byczek, LLP


                              Christina A. Leonard (CL5020)
                              Attorneys for Plaintiff
                              1981 Marcus Ave, Suite 227
                              Lake Success, New York 11042
                              (516) 358-1700


28

# EXHIBIT A

EEOC Form 161 (3/98)          U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# DISMISSAL AND NOTICE OF RIGHTS

To:  Edgardo  Rodriguez c/o          From:  New York District Office
     Christina A. Leonard, Esq.              33 Whitehall Street
     Cronin & Byczek, LLP                    5th Floor
     1981 Marcus Avenue                      New York, NY 10004
     Suite 227
     Lake Success, NY 11704

☐   On behalf of person(s) aggrieved whose identity is
    CONFIDENTIAL (29 CFR § 1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 160-2005-02414 | Hazel C. Stewart,<br>Supervisory Investigator | (212) 336-3776 |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐   Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

☐   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

☐   Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

☐   While reasonable efforts were made to locate you, we were not able to do so.

☐   You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

☒   The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐   Other (briefly state)

## - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this Notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for wilful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_____                    *September 29, 2005*

Spencer H. Lewis, Jr.,                              *(Date Mailed)*
**Director**

Enclosure(s)

cc:  Wilma Grinker, Esq.                    Edgardo  Rodriguez
     **NYC POLICE DEPARTMENT**               488 17th Street
     **Legal Bureau**                        West Babylon, NY 11704
     **Room 1406**
     **One Police Plaza**
     **Manhattan, NY 10038**

*Index No.*                    **Year 20**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EDGARDO RODRIGUEZ,

                                        Plaintiff,

              _ against -

CITY OF NEW YORK et al.

                                        Defendants.

SUMMONS AND COMPLAINT

CRONIN & BYCZEK, LLP
ATTORNEYS AT LAW
1981 MARCUS AVENUE, SUITE 227
LAKE SUCCESS, NEW YORK 11042-1016
(516) 358-1700

*To:*

*Attorney(s) for*

*Service of a copy of the within*                    *is hereby admitted.*

*Dated:*                    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

                                        *Attorney(s) for*

*PLEASE TAKE NOTICE*

☐          *that the within is a (certified) true copy of a*                              **20**
NOTICE OF   *entered in the office of the clerk of the within named Court on*
ENTRY

☐          *that an Order of which the within is a true copy will be presented for settlement to the Hon.*
NOTICE OF                    *one of the judges of the within named Court,*
SETTLEMENT *at*
           *on*                    **20**        *, at*              **M.**

*Dated:*

                                        CRONIN & BYCZEK, LLP
                                        ATTORNEYS AT LAW
                                        1981 MARCUS AVENUE, SUITE 227
                                        LAKE SUCCESS, NEW YORK 11042-1016

*To:*